IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FIRST AMERICAN COMMERCIAL BANCORP, INC.<br><br>Plaintiff,<br><br>v.<br><br>EMES PROFESSIONAL ASSOCIATES, INC.,<br><br>Defendant. | Cause No.<br><br>Amount Claimed: $143,169.99 plus attorneys' fees and costs. |

## VERIFIED COMPLAINT

NOW COMES Plaintiff First American Commercial Bancorp, Inc. ("First American"), by and through its counsel, and for its Complaint against Defendant Emes Professional Associates, Inc. ("EMES"), states as follows:

### PARTIES

1. First American is an Illinois corporation with its principal place of business located at 211 High Point Drive, Victor, NY 14564. First American is licensed to do business in the State of Illinois

2. EMES is a New Jersey corporation with its principal place of business located at 300 Columbus Circle, Suite A, Edison, NJ 08837.

### JURISDICTION AND VENUE

3. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332(a)(1) insomuch as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

1

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1332(a)(3), because the equipment lease agreement that is the subject of matter of this Complaint, executed by EMES in favor of First American, provides as follows:

> "THE PARTIES HEREBY AGREE THAT THE EXCLUSIVE VENUE FOR ANY LAWSUIT OR OTHER LEGAL PROCEEDING ARISING OUT OF OR IN ANY WAY RELATING TO ANY LEASE SHALL BE THE FEDERAL AND STATE COURTS LOCATED IN COOK COUNTY, ILLINOIS (THE "SELECTED VENUE"). LESSEE HEREBY CONSENTS TO PERSONAL JURISDICTION IN THE SELECTED VENUE …" See Exhibit 1 ¶15

## BACKGROUND

5. On or about December 8, 2020, First American, as lessor, and EMES, as lessee, entered into Master Lease Agreement No. xxxxx054 (the "MLA") which contemplates that EMES shall enter into certain equipment leases reflected by individual equipment schedules. A true and correct copy of the MLA is attached hereto as Exhibit 1.

6. On or about January 4, 2021, EMES entered into a certain Amended and Restated Equipment Schedule No. 01 ("Schedule No. 01"), for the lease of certain equipment as more specifically set forth therein (the "Equipment") in which EMES agreed to make thirty-six (36) consecutive monthly payments of $5,730.00, plus applicable taxes to First American. Schedule No. 01 incorporates the terms of the MLA. Schedule No. 01 is attached hereto as Exhibit 2.

7. On or about January 5, 2021, EMES executed a Delivery and Acceptance Certificate (the "Acceptance") in which EMES acknowledged that it received and accepted the Equipment. A true and correct copy of the Acceptance is attached hereto as Exhibit 3. Per the terms of the MLA, the Equipment Schedule No. 01 began February 1, 2021 and had an initial term of thirty-six (36) months through January 31, 2024.

8.  EMES and First American further executed a certain Amended and Restated End of Lease Addendum to Schedule No. 1, executed by EMES on December 31, 2020 and by First American on January 4, 2021 (the "EOLA"). The EOLA is attached hereto as Exhibit 4. The MLA, Schedule No. 1, the Acceptance, and the EOLA shall be collectively referred to as the "Lease."

9.  The EOLA sets forth EMES' two (2) end of term options with respect to the Equipment at the expiration of the thirty-six (36) month Base Term of the Lease, which are exercisable by EMES provided that EMES: (a) gives First American not less than "90 days advance written notice" as of the expiration of the original Base Term or any extended term and (b) it has complied with of all its obligations, including, without limitation, all payment obligations, under the Lease. Option 1 titled "Purchase Option" allowed EMES to purchase all of the Equipment for a fixed purchase price of $37,168.94 plus applicable taxes (the "Fixed Price Purchase Option" and "Fixed Price Purchase Amount"). Option 2 titled "6 Month Renewal Option" allowed EMES to renew the Base Term for an additional six (6) months (the "Renewal Term Option") at the existing rental rate, and then, provided EMES gives First American ninety (90) days' written notice, allows EMES to either (i) return the Equipment (the "Return Option") or (ii) purchase it for its then fair market value (the "FMV Purchase Option" as defined therein). EMES does not have an option to return the Equipment at the end of the initial thirty-six (36) month Base Term. If EMES fails to select an end of term option by providing ninety (90) days written notice at the expiration of the Base Term or the Renewal Term, the Lease continues at successive three (3) month periods (each an "Extended Term") until such time as EMES gives ninety (90) days' prior written notice to First American of one of the then available end of term

options. its exercise of either Option 1 or Option 2 as and when required by the terms of the EOLA.

10. EMES did not provide First American with written notice of EMES exercise of either the Fixed Price Purchase Option or the Renewal Term Option more than ninety (90) days before January 31, 2024, the expiration of the initial thirty-six (36) month Base Term. Accordingly, the Lease term extended for an Extended Term of three (3) months, expiring April 30, 2024, provided that EMES provided First American with written notice to First American of its exercise of either the Fixed Price Purchase Option or the Renewal Term Option as and when required by the terms of the EOLA. If no end of term option was timely selected, the Lease would then be extended for a second Extended Term of three (3) months, through July 31, 2024.

11. Schedule No. 01's first Extended Term expired on April 30, 2024. Per the terms of the EOLA, EMES' was required to provide written notice to First American as to its choice of the Fixed Price Purchase Option or Renewal Term Option no later than February 1, 2024.

12. Via email dated January 19, 2024, First American reminded EMES of the February 1, 2024 deadline by which EMES must give written notice to First American of its exercise of the applicable end of term option available under the EOLA. See Exhibit 7 attached hereto.

13. On January 19, 2024, EMES acknowledged First American's email (of the same date) advising of the February 1, 2024 deadline by which EMES must give written notice to First American of its exercise of the applicable end of term option available under the EOLA. See Exhibit 8 attached hereto.

14. Later that same day, First American advised EMES that it could return the Equipment after the expiration of the six (6) month Renewal Term, per Option 2 of the EOLA,

4

which would have required EMES to pay rent through July 31, 2024. See Exhibit 9 attached hereto.

15. Notwithstanding the reminders provided by First American, EMES failed to give written notice to First American of its exercise of the Fixed Price Purchase Option or the Renewal Option by February 1, 2024, and as a result the Lease extended for an additional three (3) month term ending July 31, 2024.

16. On February 12, 2024, First American received a PDF letter via email from EMES wherein EMES purported to give notice of its election to exercise the Fixed Price Purchase Option and purchase the Equipment for an amount ($34,401.84), less than the Fixed Price Purchase Amount provided by the Fixed Price Purchase Option (i.e., $37,168.94) (the "February 12, 2024 Letter"). A copy of the EMES' February 12, 2024 email and accompanying February 12, 2024 Letter are collectively attached hereto as Exhibit 10. The February 12, 2024 Letter is signed by the same EMES' employee who communicated with First American via email on January 19, 2024. Although dated January 4, 2024, upon information and belief, the pdf of the February 12, 2024 Letter was created by EMES on February 12, 2024, the same day it was emailed to First American, indicating that it was not prepared by EMES until after the then applicable February 1, 2024 notice deadline.

17. EMES did not transmit, nor did First American receive, the February 12, 2024 Letter before February 12, 2024 and, therefore, EMES failed to give written notice to First American of its exercise of the applicable end of term option of the EOLA before February 1, 2024.

18. Notwithstanding EMES failure to give written notice to First American of its exercise of the either the Fixed Price Purchase Option or the Renewal Term Option by February

5

1, 2024, on May 9, 2024, First American sent EMES a purchase letter confirming that EMES could still exercise the Fixed Price Purchase Option by paying First American on or before August 15, 2024 an amount equal to: (i) the Fixed Purchase Price Amount ($37,168.94) (the amount required by Option 1 of the EOLA) plus any and all accrued rent and other amounts due and owing under the Lease to First American through July 31, 2024.

19. EMES failed, neglected, and/or refused to execute the purchase letter and failed to pay any monthly rent to First American after April 30, 2024, said failure commencing with the payment due May 1, 2024.

20. Failure to make payments when due is an event of default under the Lease. *See* Exhibit 1, ¶11.

21. The Lease further provides in the EOLA that if "IF AN EVENT OF DEFAULT SHALL HAVE OCCURRED AND LESSOR HAS ELECTED TO EXERCISE THE REMEDY SPECIFIED IN SECTION 12(c) OF THE MASTER LEASE, LESSEE SHALL BE IRREVOCABLY DEEMED TO HAVE SELCTED OPTION 2 ABOVE [(MEANING THE RENEWAL OPTION)]. ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED." See, Ex 6.

22. As a result of EMES default, First American elected to extend the Lease term for an additional six (6) months as provided by the EOLA provision quoted in Paragraph 21 above, with EMES also then becoming liable to First American for the FMV of the Equipment in the amount of $53,000.00.

23. As of the date of the filing of this Complaint, EMES has failed to pay the rent due First American from May 2024 to July 2025. As a result, EMES is obligated to First American (as of September 6, 2024) in the total aggregate amount of $143,169.99 (defined in the MLA as the

"Stipulated Loss Value"), consisting of: accelerated rental payments (discounted) of $114,833.26, past due rental payments of $18,572.67, late fees of $1,914.51, and sales tax of $7,849.55.

24. EMES is also obligated to pay to First American interest, attorney's fees and costs

25. As a result of the default under the Lease, First American is entitled to payment of the Stipulated Loss Value of $143,169.99, plus interest at the rate of 18% per annum, plus attorneys' fees and costs and all other remedies available under the Lease. *See* Exhibit 1, ¶12.

26. First American has fully performed its obligations under the Lease.

## COUNT I – BREACH OF CONTRACT
## AGAINST EMES PROFESSIONAL ASSOCIATES, INC.

27. First American realleges and reasserts Paragraphs 1 through 29 of its Complaint as though fully set forth herein.

28. EMES breached the Lease by failing and refusing to make payments when due.

29. Because of the EMES' default under the Lease, First American has suffered actual damages in the amount of $143,169.99, plus interest at the rate of 18% per annum, plus attorneys' fees and costs.

WHEREFORE, Plaintiff FIRST AMERICAN COMMERCIAL BANCORP, INC., respectfully requests that the Court enter judgment in its favor and against EMES PROFESSIONAL ASSOCIATES, INC. in the amount of $143,169.99, plus attorneys' fees and costs, and grant such other and further relief as this Court deems just.

                                              FIRST AMERICAN COMMERCIAL BANCORP, INC.
By:   /s/ D. Alexander Darcy
       One of Its Attorneys
       D. Alexander Darcy, Esq. (ARDC # 06620515)
       Darcy & Devassy, PC
       444 N. Michigan Avenue, Suite 3270
       Chicago, IL 60611

(312)784-2400 (t)
(312)784-2410 (f)
adarcy@darcydevassy.com

**VERIFICATION**

Under penalties as provided by law, the undersigned certifies that the statements set forth in the Complaint are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certified as aforesaid that she verily believes the same to be true.

_____          11/26/2024
Darryl Walczak                                                  Date
Vice President, Asset Management
First American Commercial Bancorp, Inc.